**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **RADWAN BASSAM,** | **)** |
| | **)** |
| **Petitioner,** | **)** |
| | **)** |
| **v.** | **)**   **Case No. CIV-26-657-D** |
| | **)** |
| **SCARLET GRANT, Warden, et al.,** | **)** |
| | **)** |
| **Respondents.** | **)** |

### <u>REPORT AND RECOMMENDATION</u>

Petitioner Radwan Bassam, a noncitizen[1] and Syrian national proceeding pro se,

filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his detention

by the U.S. Immigration and Customs Enforcement ("ICE").  Doc. 1.[2]  United States

District Judge Timothy D. DeGiusti referred this matter to the undersigned Magistrate

Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C).  Doc. 4.  Respondents filed a

Response, Doc. 8, and Petitioner filed a Reply.  Doc. 9.  For the reasons set forth below,

the undersigned recommends that the Court grant the Petition to the extent it requests

habeas relief under 28 U.S.C. § 2241 for release from ICE custody.

---

[1] Unless directly quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[2] The Court added former Attorney General Pamela Bondi and Markwayne Mullin, Secretary of Homeland Security as Respondents in this matter on April 1, 2026.  Doc. 5. On April 2, 2026, Todd Blanche became the Acting Attorney General, replacing Pamela Bondi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Todd Blanche has been automatically substituted in this action.

## I.    **Background**

Petitioner Radwan Bassam is a citizen of Syria who entered the United States without inspection on September 22, 2023, at or near Brownville, Texas. Resp. at 8. He was apprehended by a Department of Homeland Security ("DHS") Customs and Border Patrol ("CBP") agent who found him inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as a noncitizen lacking a valid visa or entry document. Resp. at 8-9. Pursuant to 8 U.S.C. § 1225(b)(1)(A)(i), the CBP officer issued an expedited order of removal against Petitioner. *See* Doc. 8-2 (Expedited Removal Order) at 1. He was taken into DHS custody, where an asylum officer administered a credible fear interview. Doc. 8-1 (Foncha Decl.) at ¶ 4. The asylum officer made a negative finding, thereby sustaining the removal order. *Id.* An Immigration Judge (IJ) reviewed and affirmed DHS's credible fear determination on January 8, 2024, and returned the case to DHS for Petitioner's removal. Foncha Decl. at ¶ 4; Doc. 8-3 (IJ Order) at 1-2. Petitioner's order of removal became administratively final on that date. IJ Order at 2.

Petitioner remained in DHS custody until June 4, 2024, when he was released pursuant to an Order of Supervision (OOS). Doc. 8-4 (OOS) at 1; Foncha Decl. at 2. Petitioner alleges he was released from custody on the OOS in June 2024 because ICE had determined his removal to Syria was not reasonably foreseeable. Pet. at 6. Respondents do not rebut this allegation; nor do they offer an alternative basis for the issuance of the OOS. The OOS states Petitioner was released "because the agency has not effected your deportation or removal during the period prescribed by law." OOS at 1 (citation modified). The OOS details the conditions of Petitioner's release, including travel restrictions and

reporting requirements. *Id*. at 1-3. The OOS instructs Petitioner to assist ICE in the procurement of any necessary travel documents. *Id*. at 1.

After his release, Petitioner applied for Temporary Protected Status ("TPS") based on his Syrian nationality. Resp. at 9. He was granted TPS, which was valid from April 8, 2025, until September 30, 2025. Doc. 8-5 (TPS Approval Notice) at 1; Foncha Decl. at ¶ 5. When a noncitizen is granted TPS, benefits include "temporary protection from removal (or deportation), employment authorization in the United States, and the opportunity to apply for travel authorization." TPS Approval Notice at 1.

On January 20, 2026, when Petitioner went to his regularly scheduled check-in appointment, ICE determined he "was subject to a final order of removal and detained him." Foncha Decl. at ¶ 6. On the same date, ICE contends they served Petitioner with a written Notice of Revocation of Release, Form I-205 Notice to Alien Ordered Removed/Departure Verification,[3] and a Notice and Order of Expedited Removal.[4] *Id*.; Resp. at 22. The Notice of Revocation states ICE decided to revoke Petitioner's OOS

---

[3] The Form I-205 Notice to Alien Ordered Removed/Departure Verification is dated January 21, 2026, the day after Petitioner's re-detention. Doc. 8-6 at 1. Whether Petitioner was served this document on the day of re-detention or the day after re-detention does not impact the undersigned's analysis.

[4] The Notice and Order of Expedited Removal in the record was served upon Petitioner when he was detained by CBP upon his entry in September 2023. Doc. 8-2 at 1. However, the undersigned finds it probable that ICE provided Petitioner with a copy upon his re-detention, as ICE Officer Romeo Foncha attests in his Declaration.

based on "a determination that there are changed circumstances in your case."  Doc. 8-7

(Notice of Revocation) at 1.  The Notice of Revocation also says:

> ICE has determined that you can be expeditiously removed from the US pursuant to the outstanding order of removal against you. On 01/08/2024, you were ordered removed to Syria by an authorized DHS/DOJ official and you are subjected to an administratively final order of removal. Your case is under review by SYRIA for the issuance of a travel document.

*Id.*

Petitioner maintains conditions have not changed since the issuance of his OOS in

June 2024, and his removal is not foreseeable because "Syria is at war, ICE does not have

travel document and there are no repatriation flights to Syria."  Pet. at 6.  He alleges he

adhered to the requirements of his OOS.  *Id.*  Petitioner further claims "ICE provided no

notice and meaningful opportunity to respond before detaining [him] at a scheduled

appointment."  *Id.*

Respondents assert Petitioner's removal is reasonably foreseeable because they

"have reviewed Petitioner's file numerous times, secured identity documents, and sent the

Travel Document Request to the Consulate of Syria."  Resp. at 19.  More specifically, ICE

Enforcement Removal Operations ("ERO") claims they reviewed Petitioner's file for

identity documents on January 21, 2026, and spoke with Petitioner two days later and asked

him to obtain a copy of his Syrian passport.  Foncha Decl. at ¶ 7.  ICE contends a Travel

Document Request ("TDR") was sent to the Syrian embassy in Washington, D.C., on

February 18, 2026, and the TDR remains pending.  *Id.*

When Petitioner filed his Petition, he was detained at Cimarron Correctional Facility

in Cushing, Oklahoma, and he is still detained there.  Pet. at 1; Foncha Decl. at ¶ 6.  *See*

4

ICE Online Detainee Locator System, at https://locator.ice.gov/odls/#/results (last visited May 29, 2026).

## II.    __Petitioner's Claims__

The undersigned liberally construes[5] the Petition to raise the four grounds for relief:

- **Ground One**: Petitioner alleges his continued detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001), which limits a noncitizen's detention during the post-removal period to a reasonable time.  Pet. at 6.

- **Ground Two**: Petitioner asserts his continued, prolonged detention violates his right to due process under the Fifth Amendment of the United States Constitution.  Pet. at 6.

- **Ground Three**: Petitioner alleges his arrest and re-detention violate the Fifth Amendment's Due Process Clause, the Administrative Procedure Act ("APA"), and the Immigration and National Act ("INA").  He alleges ICE determined his removal was not reasonably foreseeable when they issued his OOS and there have been no material changes in circumstances since that time. Petitioner also asserts his arrest was arbitrary, and ICE failed to provide him with any notice or opportunity to respond to the revocation of his OOS before or after his re-detention.  Pet. at 6.

- **Ground Four**: Petitioner alleges discretionary detention violates 8 U.S.C. § 1231. Pet. at 7.

Petitioner seeks immediate release from ICE detention under the terms of his previous OOS.  *Id*.  Alternatively, he asks the Court to "order Respondents to provide a constitutionally adequate custody determination hearing before a neutral decisionmaker

---

[5] "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Court will not, however, provide a pro se litigant with arguments or act as his advocate. *Id.*

where ICE would have the burden of proving flight risk or dangerousness," and an adjudicator would "consider alternatives to detention such as parole, an order of supervision, community-based release, and bond." *Id*. at 7 (citation modified). Petitioner also seeks injunctive relief enjoining Respondents from unlawful future detention. *Id*.

## III.    <u>Relevant Standards</u>

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

Petitioner has a final order of removal, meaning his detention is governed by 8 U.S.C. § 1231(a). Under this statute, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." *Id*. § 1231(a)(1)(A). This 90-day period is known as the "removal period." *Id*. The removal period begins on the latest of: (1) the date the order of removal becomes administratively final, (2) the date of the court's final order when a removal order is judicially reviewed, or (3) the date the alien is released from detention or confinement if detained, unless the alien is confined under immigration processes. *Id*. § 1231(a)(1)(B)(i). During the removal period, noncitizens are subject to mandatory detention. *Id*. § 1231(a)(2)(A).

The detention of a noncitizen subject to a final order of removal may not be indefinite and is presumptively reasonable for only six months beyond the removal period. *See Zadvydas*, 533 U.S. at 701. "This 6-month presumption, of course, does not mean that

every alien not removed must be released after six months.  To the contrary, an alien may

be held in confinement until it has been determined that there is no significant likelihood

of removal in the reasonably foreseeable future." *Id.*

Ordinarily, "if the alien does not leave or is not removed within the removal period,

he may be released "subject to supervision." 8 U.S.C. § 1231(a)(3) (citation modified).

Inadmissible and criminal aliens detained beyond the removal period under § 1231(a)(6)

may also be released "subject to supervision."  As relevant here, after ICE releases a

noncitizen on an OOS, federal immigration authorities may later revoke his OOS and return

the noncitizen to custody if he violates conditions of release, 8 C.F.R. 241.13(i)(1), or "if

on account of changed circumstances, [ICE] determines that there is a significant likelihood

that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2).[6]

Such revocation triggers a notification and review process.

> **Revocation procedures**. Upon revocation, the alien will be notified of the
> reasons for revocation of his or her release.  [ICE] will conduct an initial
> informal interview promptly after his or her return to [ICE] custody to afford
> the alien an opportunity to respond to the reasons for revocation stated in the
> notification.

---

[6]Federal officials codified *Zadvydas* principles into immigration regulations governing the detention review process with amendments to 8 C.F.R. § 241.4 and the addition of 8 C.F.R. § 241.13.  *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 56968, 2001 WL 1408247 (F.R.) (Nov. 14, 2001) ("In light of the Supreme Court's decision in *Zadvydas*, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the custody determination of a detained alien after the expiration of the removal period.  Specifically, the rule provides a process for [ICE] to make a determination as to whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future.").

*Id.* § 241.13(i)(3). "By mandating minimum procedures, the regulation ensures the individual is afforded the basic due process protections guaranteed by the Fifth Amendment." *Li v. Bondi*, No. CIV-25-1480-J, 2026 WL 475133, at *3 (W.D. Okla. Feb. 19, 2026).

### IV.   Analysis

**A.   The Court has jurisdiction to hear Petitioner's claims regarding his re-detention and ICE's revocation of his OOS.**

Respondents argue this Court "lacks jurisdiction to review" Petitioner's challenge to his re-detention because "8 U.S.C. § 1252(g) strips district courts of jurisdiction" over claims "'arising from the decision or action to . . . execute removal orders.'" Resp. at 19 (quoting 8 U.S.C. § 1252(g)). Respondents assert "re-detention [is] 'simply the enforcement mechanism'" chosen to execute Petitioner's removal, and therefore the Court lacks jurisdiction over his claim. *Id*. at 20 (quoting *Tazu v. Att'y Gen. of United States,* 975 F.3d 292, 298 (3d Cir. 2020)). The undersigned disagrees.

The Supreme Court explained that § 1252(g)'s jurisdictional bar is narrow in scope and applies only to "three discrete actions"—the commencement of removal proceedings, adjudication of removal proceedings, and execution of removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). The Supreme Court found it "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*

Respondents' position has previously been rejected by this Court and other Judges in this District, and the Court should do the same here. *See, e.g., Nguyen v. Bondi,* No.

8

CIV-25-1402-D, 2026 WL 396548, at *4 (W.D. Okla. Feb. 12, 2026) ("The Court agrees with the magistrate judge's finding that neither 8 U.S.C. § 1252(b)(9) nor § 1252(g) deprives the Court of jurisdiction here."); *see also Cao v. Bondi*, No. CIV-25-1403-G, 2026 WL 637617, at *3 (W.D. Okla. Mar. 6, 2026) (noting "the Supreme Court's consistent use of an exceedingly narrow construction on the jurisdiction channeling provisions of § 1252" and concluding a court's "ability to consider the petition is not barred by § 1252(g)," as the petitioner was "not seeking review of the Executive's decision to execute an order of removal" but arguing "he is detained in violation of the INA because Respondents failed to comply with the applicable regulations prior to redetaining him after he was previously released on an OOS" (citation modified)).

Here, Petitioner is not challenging the underlying merits of the removal. Rather, he claims ICE unlawfully revoked his OOS, rendering the resulting detention as unlawful. Accordingly, the Court should find that it has jurisdiction to consider the Petition.

**B.     ICE failed to abide by its regulations when it revoked Petitioner's OOS.**

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause is also implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres*, 440 U.S. 741, 752-53 (1979).

9

Petitioner alleges Respondents violated INA regulations and due process by re-detaining him after his release on an OOS "without any material change in circumstances, notice and meaningful opportunity to respond."  Pet. a 6.  Respondents assert they "provided Petitioner with the proper notice and reasons for revocation of relief as required under 8 C.F.R. 241.13(i)(3)."  Resp. at 21-22.  Alternatively, Respondents argue even if Petitioner has proven a regulatory violation, release is not the appropriate remedy.  *Id*.  at 22.  The undersigned concludes ICE did not abide by its own regulations as to the revocation of Petitioner's OOS and his re-detention.

### 1.      Petitioner's re-detention is governed by 8 U.S.C. § 1231(a)(3), and his OOS was issued under 8 C.F.R. § 241.13.

Since Petitioner was previously released on an OOS after approximately five months in ICE detention after issuance of his final order of removal, his re-detention is governed by 8 U.S.C. § 1231(a)(3) and its related regulations.  To the extent Respondents argue Petitioner is subject to mandatory detention under § 1231(a)(2), the undersigned is not persuaded.  Respondents claim the Petition was filed "within the 90-day removal period *authorized by statute*."  Resp. at 16. If Petitioner were within the statutory "removal period," the undersigned agrees he would be subject to mandatory detention.  *See* 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien.").  However, Petitioner is clearly far outside the 90-day removal period.

Petitioner's removal period began January 8, 2024, when the IJ affirmed DHS's negative credible fear determination and returned the case to DHS for Petitioner's removal.  *See* IJ Order at 2; *see also* 8 C.F.R. § 1208.30(g)(2)(iv)(A) ("If the immigration

judge concurs with the determination of the asylum officer that the alien does not have a credible fear of persecution or torture, the case shall be returned to DHS for removal of the alien. The immigration judge's decision is final and may not be appealed."). The removal period concluded April 7, 2024—90 days after his removal order was administratively final. *See supra* Section III (explaining calculation of the removal period); *see also Alva v. Kaiser*, No. 25-CV-06676, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) (finding petitioner was not subject to mandatory detention under § 1231 and declining to restart the 90-day clock for the statutory removal period when petitioner was re-detained by ICE years after his order of removal was administratively final).

Next, to evaluate whether ICE complied with its regulatory obligations in revoking Petitioner's OOS, the undersigned must first discern which revocation regulation applies. That resolution depends on whether ICE issued Petitioner's OOS pursuant to 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13, which have distinct provisions governing revocation—8 C.F.R. § 241.4(l) and 8 C.F.R. § 241.13(i), respectively. *See, e.g., Bui v. Bondi*, No. CIV-26-91-J, 2026 WL 788947, at *2 (W.D. Okla. Mar. 20, 2026) ("First, the Court is tasked with determining whether § 241.4 or § 241.13 applies. Although both regulations include provisions permitting Respondents to revoke an individual's Order of Supervision, there may be materially distinct requirements depending on which regulation applies."); *Grigorian v. Bondi*, No. 25-CV-22914, --- F. Supp. 3d ----, 2025 WL 2604573, at *5 (S.D. Fla. Sept. 9, 2025) ("Revocation under § 241.13(i) applies only to aliens released under § 241.13(g)—where ICE has formally determined that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future.").

11

The undersigned concludes ICE issued Petitioner's OOS pursuant to § 241.13(g) after determining Petitioner's removal was not significantly likely in the reasonably foreseeable future. Respondents do not specify the statutory or regulatory basis underlying Petitioner's release and OOS. Nor do they rebut Petitioner's allegation ICE previously released him in June 2024 because of the war in Syria and the lack of repatriation flights. Pet. at 6.

Respondents provide a copy of Petitioner's OOS, which was issued in June 2024 "[b]ecause this Agency has not effected [his] deportation or removal during the period prescribed by law." OOS at 1. Judges in this District have found that exact language to "signal[] the individual was released" under § 241.13 "because the government made a determination that there was no significant likelihood of removal in the reasonably foreseeable future." *Bui*, 2026 WL 788947, at *3; *Khaddaj v. Grant*, No. CIV-26-273-SLP, 2026 WL 1432690, at *1 (W.D. Okla. May 21, 2026) (concluding same language in a petitioner's OOS "indicates that § 241.13 applies"). Further, Respondents argue they properly followed procedure to revoke the OOS under § 241.13(i)(3), Resp. at 21-22, which would only apply if the OOS were initially issued under § 241.13(g) after ICE determined there was no significant likelihood Petitioner would be removed in the reasonably foreseeable future.

The specific conditions of Petitioner's release listed in his OOS are also helpful in making this determination. When a noncitizen is released on an order of supervision under § 241.4, the order must include, but is not limited to, requirements that he

12

(1) "report to a specified officer periodically and provide relevant information under oath as directed";

(2) "continue efforts to obtain a travel document and assist . . . in obtaining a travel document";

(3) "report as directed for a mental or physical examination";

(4) "obtain advance approval of travel beyond previously specified times and distances"; and

(5) "provide DHS with written notice of any change of address."

8 C.F.R § 241.5(a).

When a noncitizen is released under § 241.13, after a Headquarters Post-Order Detention Unit ("HQPDU") determination that the noncitizen's removal is not significantly likely in the reasonably foreseeable future, the OOS

> [s]hall include all provisions provided in § 241.5 and shall also include the condition that the alien obey all laws, . . . that the alien continue to seek to obtain travel documents and provide [ICE] with all correspondence to Embassies/Consulates requesting the issuance of travel documents and any reply from the Embassy/Consulate, . . . and any other conditions that the HQPDU considers necessary to ensure public safety and guarantee the alien's compliance with the order of removal.

8 C.F.R. § 241.13(h)(1) (citation modified).

Petitioner's OOS contains all conditions in § 241.5 plus requirements that he provide ICE with written copies of requests to Embassies/Consulates requesting issuance of a travel document and any written responses to those requests. OOS at 3. The OOS also has conditions prohibiting him from specified criminal activities. *Id*. at 1, 3. The conditions of Petitioner's OOS therefore comport closely with § 241.13(h)(1).

13

In sum, Petitioner's OOS was issued under § 241.13.  The issue before the Court then is whether his OOS was properly revoked under the procedures in § 241.13(i) when ICE re-detained him.  The undersigned determines that it was not.

### 2.    Violation of § 241.13(i)(2)

ICE may revoke an OOS and "return the alien to custody" if he violates the conditions of supervised release or "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(1)-(2).  Respondents do not allege Petitioner violated any conditions of release, so they must rely solely on the "changed circumstances" prong as the justification for revocation.

This Court has previously concluded Respondents bear the burden "to establish that, on account of changed circumstances, there is a significant likelihood of removal in the reasonably foreseeable future, pursuant to Section 241.13(i)(2)").  *Ye v. Bondi,* No. CIV-25-1230-D, 2025 WL 3485420, at *2 (W.D. Okla. Dec. 4, 2025); *see also Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025) ("The Court finds the Magistrate Judge correctly placed the burden on Respondents to establish a significant likelihood of removal in the reasonably foreseeable future in the context of re-detention under § 241.13(i)(2).").  Other courts agree.  *See, e.g., Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) (ruling ICE has the burden to make "required finding" to show substantial likelihood of removal in the reasonably foreseeable future at re-detention); *Roble v. Bondi,*  803 F. Supp. 3d 766, 772-73 (D. Minn. 2025) (same);

*Escalante v. Noem*, No. 25-cv-182, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) (same); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150-51 (D. Mass. 2025) (same).

When ICE decides to revoke an OOS on account of changed circumstances, ICE must make an individualized determination that changed circumstances make removal of a noncitizen significantly likely in the reasonably foreseeable future. *See Kong,* 62 F.4th at 619-20 (citing 8 C.F.R. § 241.13(i)(2)). The regulations specify that ICE should consider several factors in making this determination, including:

> [t]he history of the alien's efforts to comply with the order of removal, the history of [ICE's] efforts to remove aliens to the country in question or to third countries, including the ongoing nature of [ICE's] efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.

8 C.F.R. § 241.13(f).

The record evidence here, however, shows ICE failed to make an individualized determination regarding the significant likelihood of Petitioner's removal based on changed circumstances, as required by § 241.13(i)(2). Respondents state that ICE detained Petitioner at his check-in appointment because ICE determined he "was subject to a final order of removal." Foncha Decl. at ¶ 6. In the Notice of Revocation of Release, the only arguable change in circumstances provided at the time of Petitioner's re-detention was that his "case was under current review by SYRIA for the issuance of a travel document." Notice of Revocation at 1. Notably, however, Respondents asked Petitioner for his Syrian passport days *after* his re-detention and only later sent a TDR to the Syrian embassy on February 18, 2026, which remains pending. Foncha Decl. at ¶ 7. The Foncha declaration

15

provides no details regarding ICE's previous attempts to remove Petitioner, and the record is devoid of evidence as to specific actions the Syrian government could have been taking for a "current review" of Petitioner's case on January 20, 2026.

Additionally, Respondents make no attempt to address Petitioner's central allegations that (1) he cannot be removed to Syria because of its ongoing civil conflict; (2) there are no repatriation flights to Syria; and (3) circumstances have not materially changed since his OOS was issued in June 2024. Pet. at 6. Respondents do not provide *any* data regarding their ability to remove noncitizens to Syria. Their generalized statement that "Petitioner's removal is significantly likely, and indeed imminent," Resp. at 27, is not supported by record evidence. *See, e.g., Khaddaj*, 2026 WL 1432690, at *2 (concluding respondents did not present sufficient evidence as to a Syrian national petitioner "in support of there being changed circumstances and therefore violated the 'changed circumstances' requirement of the regulation when they re-detained" him); *Tran v. Blanche*, No. CIV-25-1357-G, 2026 WL 1181700, at *2 (W.D. Okla. Apr. 30, 2026) ("Respondents' citation of evidence showing a general upswing in Vietnam's willingness to repatriate its citizens who are in the United States does not suffice to show that Respondents made a specific determination, prior to revoking Petitioner's OOS and detaining Petitioner, that in light of changed circumstances there was a significant likelihood that Petitioner may be removed to Vietnam in the reasonably foreseeable future."); *see also Qui v. Carter*, No. 25-3131, 2025 WL 2770502, at *3-4 (D. Kan. Sept. 26, 2025) (holding ICE violated its regulations when revoking existing OOS as it did not "provide any details or statistics or evidence to support" a determination of changed circumstances).

16

Further, ICE's efforts to send a TDR to the Syrian embassy are not sufficient evidence of changed circumstances, especially when considering Respondents did not send the TDR until February 18, 2026, several weeks *after* Petitioner's re-detention.  *See* Foncha Decl. at ¶ 7.  Travel documents requested or received after the revocation of release are not changed circumstances that can justify revocation under § 241.13(i)(2) because they did not exist or occur at or before the time of revocation, as "§ 241.13(i)(2) requires that this determination is made before the removable alien has had his release revoked."  *Duong v. Charles*, No. 1:25-CV-01375, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025) (citation modified); *see also Munagi v. McDonald*, 813 F. Supp. 3d 225, 229 (D. Mass. 2025) (granting petitioner's release, though the government had recently obtained travel documents for petitioner's return to Kenya, because the travel documents were not requested until after petitioner's release had been revoked); *Duong*, 2025 WL 3187313, at *3 (granting petitioner's immediate release, though the government had recently obtained travel documents for petitioner's return to Vietnam, because travel documents were not requested until almost one month after petitioner's release had been revoked); *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 788 (D. Minn. 2025) (recommending petitioner's release after concluding respondents violated § 241.13(i)(2) because, among other things, a request for travel documents several weeks after petitioner's release was revoked "could not have constituted the supposedly changed circumstances underlying the Notice") (R&R), *adopted*, 803 F. Supp. 3d 775, 784 (D. Minn. 2025).

Finally, the Foncha Declaration is dated April 14, 2026, more than six weeks ago. Foncha Decl. at 2.  Since then, Respondents have provided no updates about the status of

the TDR.    With no information to the contrary, the undersigned presumes ERO has not received updates from Syria or taken additional steps to obtain Petitioner's travel documents apart from those provided in Officer Foncha's declaration. *See Ye*, 2025 WL 4034264, at *5 ("In the absence of further factual declarations from Respondents, the undersigned assumes that none of these actions [related to TDR progress] have occurred.") (R&R), *adopted in part*, 2025 WL 3485420.

### 3.    Violation of § 241.13(i)(3)

Petitioner also alleges ICE arbitrarily arrested and detained him "without any material change in circumstances, notice, and meaningful opportunity to respond." Pet. at 6.  Respondents contend they "provided Petitioner with the proper notice and reasons for revocation of relief" and have "complied with the regulatory requirements" of § 241.13(i)(3) because they served him with a Notice of Revocation of release.  Resp. at 21-22.  The undersigned is not persuaded.

Respondents do not rebut Petitioner's allegation he did not receive an "opportunity to respond" after arrest to determine whether his OOS should be reinstated or otherwise to allow him to provide information showing no significant likelihood of his removal in the reasonably foreseeable future, as required by § 241.13(i)(2)-(3).  The Notice of Revocation states Petitioner will receive an informal interview and if he is not released after the interview, he will receive notification of a new review that "will occur within approximately three months of the date of this notice."  Notice of Revocation at 1. Yet Petitioner has been detained for four months, and no evidence in the record indicates he has been interviewed.

18

With no evidence to the contrary from Respondents, the undersigned also concludes ICE did not comply with requirements for a post-detention interview under § 241.13(i)(3) so Petitioner could respond to ICE's bases for his revocation and re-detention. *See, e.g., Li*, 2026 WL 475133, at *2 (granting habeas relief after concluding ICE violated "§ 241.13(i)(3) by failing to notify Petitioner of the reasons for revocation of his release, promptly conduct an informal interview after Petitioner's return to custody, and afford Petitioner the opportunity to respond and challenge the Government's conclusion that there is a significant likelihood Petitioner will be removed in the reasonably foreseeable future").

### 4.    Habeas relief is the appropriate remedy

Respondents have failed to show ICE abided by its own regulations when revoking Petitioner's OOS, making the revocation unlawful. Judges in this District have found "fail[ure] to comply with § 241.13(i)(2) in establishing a change of circumstances that demonstrated a significant likelihood of removal in the reasonably foreseeable future at the time of Petitioner's re-detention" or "not providing the Petitioner with written notice of the reasons for his revocation" under § 241.13(i)(3) "amounts to a due process violation, entitling the petitioner to habeas relief." *Pham*, 2025 WL 3243870, at *1; *see also Ye*, 2025 WL 3485420, at *3 (finding "ICE's failure to abide by its own regulations in making the decision to revoke Petitioner's OOS renders the revocation unlawful, and that his release is therefore appropriate"); *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 3452454, at *4 (W.D. Okla. Dec. 1, 2025) (granting habeas relief where respondents failed to satisfy § 241.13(i)(2)).

19

Because ICE violated its own regulations, Petitioner's detention is unlawful and release is appropriate under 28 U.S.C. § 2241(c)(3). *See Ye*, 2025 WL 3485420, at *3 (ordering release after finding revocation of petitioner's OOS was unlawful where ICE failed to establish changed circumstances before revocation under § 241.13(i)(2)); *Hamidi*, 2025 WL 3452454, at *3 ("ICE's violation of § 241.13(i) denied Petitioner the process to which he was entitled by law and that such a denial entitles Petitioner to habeas relief").[7]

**C.    The Court should decline to address Petitioner's additional claims for relief.**

Petitioner also alleges his re-detention violated his Fifth Amendment rights to due process pursuant to *Zadvydas* and under the APA. Pet. at 6-7. Because the undersigned recommends the Court grant the Petition after finding ICE violated its own regulations when revoking Petitioner's OOS and re-detaining him, the Court should decline to address his remaining claims. *See, e.g.*, *Ye*, 2025 WL 3485420, at *3 (declining to address remaining claims and denying as moot requests for injunctive relief after granting habeas

---

[7] Other courts have also found release appropriate in similar circumstances. *See Nguyen v. Warden of the Golden State McFarland Detention Facility*, No. 2:25-CV-03297, 2026 WL 72110, at *4 (E.D. Cal. Jan. 9, 2026) ("Because the Government was required to, but failed to comply with, section 241.13(i) when it revoked Petitioner's supervised release on October 16, 2025, issuing a writ to reinstate that release is warranted to preserve the status quo before the Government's unlawful actions."); *Tran v. Bondi*, No. C25-01897, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025) (finding petitioner's re-detention did not comply with the requirements of § 241.13, and granting habeas relief); *Yee S. v. Bondi*, 2025 WL 2879479, at *6 (D. Minn. Oct. 9, 2025) (ordering release as ICE's re-detention of petitioner "violated the law because ICE did not comply with its own regulations under section 241.13(i)(2)"); *Roble*, 803 F. Supp. 3d at 774 (holding "ICE, like all government agencies, must follow its own regulations," and ordering release based on violation of § 241.13(i) (citation modified)); *Sarail A.*, 803 F. Supp. 3d at 784 (ordering release based on violation of § 241.13(i)).

relief based on the § 241.13(i)(2) violation); *Hamidi,* 2025 WL 3452454, at \*4 ("Having resolved the illegality of Petitioner's current detention, his remaining requests for relief will be dismissed."). Further, considering the recommended relief, the Court also need not address Petitioner's requests for injunctive and declaratory relief. *See* Pet. at 7.

## V.     Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court **GRANT** the Petition to the extent Petitioner requests habeas relief under 28 U.S.C. § 2241 for release from ICE custody. The undersigned recommends that the Court order Respondents to release Petitioner from custody immediately, subject to an appropriate Order of Supervision. *See Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated." (citation modified)). The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within five business days of the Court's order.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **June 5, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **June 10, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 29th day of May, 2026.

_____
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE